**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUSAN K. MASON,** | : | **Civil No. 1:14-CV-1680** |
| **as Administrator of the Estate** | : | |
| **of Monique N. Mason,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DAUPHIN COUNTY PRISON,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM ORDER**

## I.   INTRODUCTION

This is a lawsuit filed by Susan K. Mason, the Administrator of the Estate of

Monique N. Mason, a former inmate at the Dauphin County Prison who died while

in custody.  The Administrator has sued the Prison, the Dauphin County Board of

Commissioners, PrimeCare Medical and one of its doctors, and Dominick DeRose,

the Warden, alleging that the defendants wrongfully caused Mason's death, and

violated her rights under the Eighth and Fourteenth Amendments to the United States

Constitution.  After the defendants moved to dismiss the initial complaint, the plaintiff

filed an amended complaint on December 22, 2014.  On January 5, 2015, the

defendants filed a second motion to dismiss, which is fully briefed.

In the motion, the defendants argue that the plaintiff has failed adequately to

plead a cause of action under 42 U.S.C. § 1983, the statutory vehicle used to prosecute civil rights actions.   The defendants maintain that the plaintiff has not alleged sufficient facts to make out a viable claim for deliberate indifference to Ms. Mason's serious medical needs, in violation of the Eighth Amendment.  The defendants also argue that the plaintiff has improperly attempted to impose liability against the Prison on the basis of supervisory liability, or respondeat superior – something that is unavailable in § 1983 actions.  The defendants relatedly argue that the plaintiff has not alleged facts that would be sufficient to establish a <u>Monell</u>[1] claim for municipal or institutional liability.

The motion has been fully briefed and is ripe for disposition.  For the reasons that follow, the motion will be granted.

## II.    <u>BACKGROUND</u>

The factual background is taken from the well pleaded factual allegations set forth in the amended complaint, which are accepted as true for purposes of considering the motion to dismiss.  <u>See</u> <u>Eid v. Thompson</u>, 740 F.3d 118, 122 (3d Cir. 2014) (when evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the

---

[1]  <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978).

plaintiff may be entitled to relief.").

Between November 21, 2011, and March 5, 2013, Monique Mason was housed as an inmate at the Dauphin County Prison.  Prior to her admission as an inmate, in April 28, 2011, Mason was diagnosed with a colloid cyst[2] in the third ventricle of her brain, small lateral ventricles, calcification of her pineal gland, as well as possible Chiari formation.  (Am. Compl. ¶ 20.)  According to the complaint, the prison and medical defendants were aware of this diagnosis.  In addition, according to the complaint, officials at the Prison were aware that on October 12, 2011, Dr. Stephen Powers had performed an MRI and had diagnosed Mason with small lateral ventricles, swollen brain symptoms, and severe headaches, including intermittent episodes of pre-syncope.  (Am. Compl. ¶ 22.)

The plaintiff alleges that between November 21, 2011, and March 2, 2013, prison officials and medical staff either were aware, or should have been aware, of the plaintiff's diagnosis, and indeed the plaintiff notes that on that date of her intake at the prison Defendant PrimeCare Medical noted in records that Mason had a cyst in her brain, and anemia.

A month after her arrival at the prison, PrimeCare Medical noted that Mason's

---

[2] According to the plaintff, a colloid cyst is a non-cancerous growth that can increase in size.  This size increase can cause headaches, dizziness and ultimately death depending upon the growth.  (Am. Compl. ¶ 21.)

headaches were recurring more frequently, she was light-headed when she got out of bed, and again observed that she had a history of a colloid cyst.  (Am. Compl. ¶ 25.) Seven months later, Mason presented with a "severe headache," and noted at the time that she had been diagnosed with a cyst in her brain in 2011.  (Am. Compl. ¶ 26.) Early in 2013, the plaintiff avers that Mason had experienced an incident called syncope, which is a symptom of brain swelling, though it was believed that she suffered not injuries from this incident.  (Am. Compl. ¶ 27.)

The following month, on February 25, 2013, PrimeCare noted that the plaintiff was again suffering from headaches attributable to migraines, and Mason was prescribed Topomax.  The plaintiff alleges that despite knowledge of Mason's condition, PrimeCare Medical had no protocols, rules or procedures in place to assess, refer, or treat neurological problems such as those Mason experienced.  (Am. Compl. ¶ 28.)

On February 27, 2013, Mason suffered a syncopal incident, which rendered her nonresponsive; although she was later aroused at the time she received medical care. The plaintiff alleges that PrimeCare Medical knew that Mason had been nonresponsive for a period.  (Am. Compl. ¶ 30.)  The plaintiff alleges that up to this time, Mason had reported severe and worsening headaches to the Dauphin County Prison medical staff and PrimeCare Medical on numerous occasions, and the response

4

was to prescribe anti-migraine medication and Motrin without referring Mason to a neurologist, despite prison officials and medical providers working for the prison being aware of Mason's brain abnormalities, and despite knowing that Mason's colloidal cyst needed to be followed periodically by neurologists and neurosurgeons, but failed to do so because they lacked any protocols, rules or procedures for such referrals.  (Am. Compl. ¶¶ 38-40.)

Days later, on March 2, 2013, Mason was found on the floor by her bunk, nonresponsive.   Prison records indicate that CPR was administered and that emergency services were summoned.  Medical staff attempted to resuscitate Mason, but were unsuccessful and she was transferred by ambulance to Harrisburg Hospital. (Am. Compl. ¶¶ 31-33.)  On March 5, 2012, Mason was declared brain dead, one day shy of her 32nd birthday.  (Am. Compl. ¶ 34.)

An autopsy was performed, which showed pressure, severe brain swelling and brain herniation as a result of hydrocephalus caused by Mason's underlying colloidal cyst and possible Chiari formation.   The autopsy listed the cause of death as complications of hypoxic encephalopathy and cerebral edema. (Am. Compl. ¶ 35-36.)


## III.   Summary of Claims and the Defendants' Motion in Response

In her amended complaint, the plaintiff has set forth five separated by closely

related counts for relief.  In Counts I and II, the plaintiff alleges that PrimeCare Medical and Dr. Carl A. Hoffman, Jr., were deliberately indifferent to Mason's known, serious medical conditions, and through this deliberate indifference proximately caused her death by failing to respond to and treat those conditions; ignoring the condition of Mason's cyst and possible Chiari malformation and the potential for it to cause hydrocephalus; failing to follow-up and consult with outside medical providers; failing to make proper medical judgments through qualified medical personnel; and failing to have in place proper protocols, rules or procedures for referring inmates with brain abnormalities, frequent headaches, and episodes of syncope to a specialist.  (Am. Compl. ¶ 45.)

In Counts III, IV, and V, all of which are labeled "Vicarious Liability," the plaintiff alleges that Warden DeRose, Dauphin County, and its Board of Commissioners are "vicariously liable" for the "negligence and careless acts of his employees, agents and servants, namely PrimeCare Medical, Inc., . . . and Carl A. Hoffman, Jr., D.O." that is actionable as a violation of the Eighth Amendment.[3]

---

[3] In addition to alleging the foregoing constitutional tort claims, the plaintiff also brings a "survival action" on behalf of Mason's estate, pursuant to Pennsylvania state law, 42 Pa. Cons. Stat. Ann. § 8302.  Similarly, the plaintiff brings a claim for wrongful death under Pennsylvania state law, 42 Pa. Cons. Stat. Ann. § 8301(b).  (Am. Compl. ¶¶ 62-75.)  The state law claims are not subject to the instant motion to dismiss.

The defendants maintain that the plaintiff has failed to plead facts sufficient to state a claim for deliberate indifference under the Eighth Amendment, and additionally argue that the plaintiff fundamentally misapprehends the reach of 42 U.S.C. § 1983, which does not afford liability based upon notions of vicarious liability. Additionally, the defendants contend that the plaintiff has in any event failed to plead facts sufficient to support a claim for municipal liability under <u>Monell</u>.

## IV.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46 (1957) ). The facts alleged must be sufficient to "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. <u>Id.</u> at 556.  Furthermore, in order to satisfy federal

pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir.2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox,

Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994).

**V.    DISCUSSION**

    **A.    42 U.S.C. § 1983**

    The text of 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any person of the United States or other person
> within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress .
> . . .

42 U.S.C. § 1983.  Section 1983 is not itself a source of substantive rights, but is

rather a vehicle that plaintiffs may use in order to seek redress against state actors for

alleged violations of rights under the Constitution or other federal law, including

under the Eighth Amendment to the United States Constitution. City of Oklahoma

City v. Tuttle, 471 U.S. 808, 816 (1985); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d

Cir. 1996).

    **B.    Deliberate Indifference Under the Eighth Amendment.**

    The Eighth Amendment provides that "[e]xcessive bail shall not be required,

nor excessive fines imposed, nor cruel and unusual punishments inflicted."  With

respect to prisoner confinement, the Eighth Amendment obligates the government "to

provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976); see also Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Reynolds v. Wagner, 128 F.3d 166, 172-73 (3d Cir. 1997). "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death." Estelle, 429 U.S. at 103 (quoting In re Kemmler, 136 U.S. 436, 447 (1890)).

In Estelle, the United States Supreme Court held that prison officials violate the Eighth Amendment's proscription of cruel and unusual punishment when they exhibit "deliberate indifference to serious medical needs of prisoners." 429 U.S. at 104. The standard that Estelle established "requires [both that there be] deliberate indifference on the part of the prison officials and [that] the prisoner's medical needs . . . be serious." Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (quoting West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978)). Under this two-prong test, an inmate must first objectively establish a deprivation of medical care, or the result of such deprivation, the result of which was sufficiently serious to implicate a constitutional violation. Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). An inmate's medical need is serious under this standard when it "has been diagnosed by a physician as

requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citations and internal quotations omitted). Secondly, the inmate-plaintiff must show that prison officials subjectively knew of the deprivation and "disregard[ed] an excessive risk to [the] inmate['s] health or safety." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Thus, in the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle, 429 U.S. at 105.  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, the plaintiff is thus required to point to evidence that demonstrates (1) Mason had a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); see also Woloszyn v. County of Lawrence, 396 F.3d 314, 321 (3d Cir. 2005) (for a claim of deliberate indifference against a prison official to survive, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary

11

medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197. The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, . . . violates the Eighth Amendment." Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003).

At the same time, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2002) (claims of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment).  Instead, deliberate indifferent represents a much higher standard, one that requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse, 182 F.3d at 197 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an

inmate has received some level of medical care"). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Thus, "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997). It follows that a plaintiff's disagreement over the type of medical treatment given to him will not support a claim for deliberate indifference. See Lanzaro, 834 F.2d at 346.

## C.   Individual Defendants Must Be Shown to Have Had Personally Involved in the Alleged Constitutional Deprivation.

In addition to the foregoing substantive legal principles governing claims for Eighth Amendment violations premised on alleged deliberate indifference to a serious medical need, we note that in all claims brought for relief under § 1983, a plaintiff must show that each defendant had personal involvement in the alleged constitutional deprivation. In order to prevail on a civil rights claim, a plaintiff must establish that: (1) the alleged wrongful conduct was committed by a person acting under color of state law, and (2) the conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). It is thus axiomatic that in order to be liable under § 1983, a defendant

must have had actual personal involvement in the alleged wrongdoing. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Such personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence. Id. To prove personal involvement through acquiescence requires that a plaintiff demonstrate that the defendant had contemporaneous knowledge of the alleged wrongdoing, and actual supervisory authority over the alleged violator. Robinson v. Pittsburgh, 120 F.3d 1286, 1293-94 (3d Cir. 1997). Thus, section 1983 liability cannot be predicated upon the application of *respondeat superior*. Rode, 845 F.2d at 1207-08.

### D. Monell **Liability Likewise May Not Be Predicated on Principles of** *Respondeat Superior*.

Municipalities and private corporations that contract with the state to provide services cannot be subjected to liability under § 1983 on the basis of *respondeat superior*. See Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978) (holding that a municipality cannot be liable under § 1983 on a theory of *respondeat superior*). Instead, in order to hold a private corporation liable under § 1983, a plaintiff must prove that he suffered a constitutional deprivation as a result of an official corporate policy or custom. Natale, 318 F.3d at 583-84; see also Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997); Griggs v. Dauphin County Prison, No. 1:06-

14

0823; 2008 WL 2518090, at *4 (M.D. Pa. June 19, 2008); <u>Miller v. City of Phila.</u>, No. 96-3578, 1996 U.S. Dist. LEXIS 17514, 1996 WL 683827, at *4 (E.D. Pa. Nov. 26, 1996) (in order to establish liability for a private corporation, a plaintiff must show that the corporation, "with 'deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm.'") (quoting <u>Stoneking v. Bradford Area Sch. Dist.</u>, 882 F.2d 720, 725 (3d Cir. 1989)).  As the Third Circuit has explained, a

> policy or custom can be established in two ways.  Policy is made when a "decisionmaker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict.  A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

<u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996) (quoting <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990)).  Custom may also be established by evidence that demonstrates knowledge or acquiescence.  <u>Beck</u>, 89 F.3d at 971 (citing <u>Fletcher v. O'Donnell</u>, 867 F.2d 791, 793 (3d Cir. 1989)).

The law is similar with respect to municipal liability.  Following <u>Monell</u>, a local government cannot be sued pursuant to § 1983 for injuries inflicted solely by its employees.  436 U.S. at 694.  Instead, local governments may be held liable under this statute only for "their own illegal acts."  <u>Connick v. Thompson</u>, – U.S. –, 131 S. Ct.

1350, 1359 (2011).  The Third Circuit has recognized that local governments may be

liable in three circumstances:

> First, the municipality will be liable if its employee acted
> pursuant to a formal government policy or a standard
> operating procedure long accepted within the government
> entity; second, liability will attach when the individual has
> policy making authority rendering his or her behavior an
> act of official government policy; third, the municipality
> will be liable if an official with authority has ratified the
> unconstitutional actions of a subordinate, rendering such
> behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005).

**E.    Plaintiff's Claims Against the Individual Defendants Fail Because they Do Not Include Any Allegations of Personal Involvement, But Are Predicated Solely Upon Principles of Vicarious Liability for the Actions of Others.**

Against these well-settled standards, we are constrained to note that despite

having previously been placed on notice of the requirement that she demonstrate

personal involvement in order to sustain § 1983 claims against the individual

defendants, the plaintiff has included no factual averments of any personal

involvement on the part of Dominick DeRose, the Warden of Dauphin County Prison,

or against Dr. Hoffman.  Instead, Warden DeRose has been named exclusively

because of his supervisory role at the Prison and this is simply not an adequate basis

for a claim of deliberate indifference to go forward against him.  Likewise, Dr.

Hoffman seems to have been named because he holds some kind of supervisory

responsibility within PrimeCare Medical, or is responsible for supervising other medical providers at the prison. The complaint does not allege that Dr. Hoffman was personally involved in Mason's care.

Indeed, the plaintiff all but concedes the point in the amended complaint itself when she avers that "Defendant Dominick DeRose, is *vicariously liable* for the negligence and carelessness of his employees, agents and servants, namely, PrimeCare Medical, Inc., d/b/a PrimeCare Medical and Carl A. Hoffman, Jr., D.O.. . . ." (Am. Compl. ¶ 51) (emphasis added.) This statement of the basis for her claim against Defendant DeRose is thus premised on a theory that is simply not available in claims under 42 U.S.C. § 1983, and in fact is grounds for dismissal of this defendant. We have read the amended complaint liberally, but even so are unable to ignore the fact that the pleading contains no allegations of personal involvement by either of these individual defendants, and there is no reasonable way to infer personal involvement by either of the defendants based upon the facts alleged throughout the pleading. Without such allegations, the action must be dismissed against these individuals.

However, in the exercise of the court's discretion, and out of an abundance of caution, the claims against Warden DeRose and Dr. Hoffman will be dismissed, but without prejudice to the plaintiff endeavoring one final time, if she is able, to articulate facts showing actual personal involvement necessary to support a claim for

§ 1983 liability against either of the individual defendants.

**F.     Plaintiff's Claims Against the Institutional Defendants are Expressly Predicated on Vicarious Liability, and Must Be Dismissed.**

As with the claims against the individual defendants, the plaintiff has overlooked the fact that claims for municipal or corporate liability in the § 1983 context expressly may not be predicated on *respondeat superior* or vicarious liability. Nevertheless, that is precisely the basis for liability that the plaintiff has asserted in Counts III, IV, and V of the amended complaint.  This is legally improper.

The plaintiff seems to be alleging that PrimeCare Medical, the Dauphin County Prison, and the Dauphin County Commissioners are all proper defendants in an action alleging Eighth Amendment violations simply because they are either "vicariously liable" for the "negligence and careless acts of [their] employees, agents and servants", or because, in PrimeCare Medical's case, the company was contracted with the prison to provide medical care.  However, as discussed above, more needs to be pled in order to sustain a claim for municipal or corporate liability in this context.

The plaintiff has suggested, with little factual support, that PrimeCare Medical and the municipal parties lacked adequate policies or procedures for managing patients like Ms. Mason, but has fallen far short of what is needed to support a claim for municipal or corporate liability under Monell.  Instead, the plaintiff has mistakenly presented her claims against these defendants by explicitly averring that the claims are

18

predicated on the theory of "vicarious liability," which is not available in this context.[4]

Because the claims have been alleged on a theory that is not recognized in this civil rights context, and because the amended complaint fails to include facts to support claims for municipal liability in any event, these claims must be dismissed, but will be dismissed without prejudice to her attempting one final time to articulate a cognizable basis for imposing liability against these defendants, and to articulate sufficient factual allegations to support those claims.

## VI.   **ORDER**

Accordingly, for the reasons explained above, IT IS HEREBY ORDERED THAT the defendants' motion to dismiss the amended complaint (Doc. 29) is GRANTED, and the amended complaint is DISMISSED without prejudice to the plaintiff filing an amended complaint within 20 days from the date of this order that addresses the legal deficiencies that have been identified.

So ordered this 27th day of April, 2015.

---

[4] We recognize that the plaintiff has brought state-law claims for wrongful death, and a survivor action on behalf of Ms. Mason's estate.  The parties have not addressed the supplemental state-law claims, and our assessment of the adequacy of the pleading is focused strictly on the federal claims alleged.  Thus, whether Pennsylvania law recognizes supervisory or vicarious liability for the state-law claims is not at issue in this opinion.  Instead, we are focused solely on whether the plaintiff may maintain federal constitutional claims under 42 U.S.C. § 1983 on a theory of vicarious liability.  As explained, she cannot.

/s/ <u>Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge