**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUSAN K. MASON,** | : | **Civil No. 1:14-CV-1680** |
| **as Administrator of the Estate** | : | |
| **of Monique N. Mason,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DAUPHIN COUNTY PRISON,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM ORDER</u>**

## I.   <u>INTRODUCTION</u>

This is a lawsuit filed by Susan K. Mason, the Administrator of the Estate of

Monique N. Mason, a former inmate at the Dauphin County Prison who died while

in custody.  The Administrator has sued the Prison, the Dauphin County Board of

Commissioners, PrimeCare Medical and one of its doctors, and Dominick DeRose,

the Warden, alleging that the defendants wrongfully caused Mason's death, and

violated her rights under the Eighth and Fourteenth Amendments to the United States

Constitution.  After the defendants moved to dismiss the initial complaint, the

plaintiff filed an amended complaint on December 22, 2014.  On January 5, 2015, the

defendants filed a second motion to dismiss.

In that motion, the defendants argued that the plaintiff failed adequately to plead a cause of action under 42 U.S.C. § 1983, the statutory vehicle used to prosecute federal civil rights actions. Specifically, the defendants maintained that the plaintiff did not allege sufficient facts to make out a viable claim for deliberate indifference to Ms. Mason's serious medical needs, in violation of the Eighth Amendment. The defendants also argued that the plaintiff had improperly attempted to impose liability against the Prison on the basis of supervisory liability, or *respondeat superior* – something that is unavailable in § 1983 actions. The defendants relatedly argued that the plaintiff did not allege facts that would be sufficient to establish a <u>Monell</u>[1] claim for municipal or institutional liability.

Upon consideration, we agreed, and entered an order dismissing the amended complaint. However, out of an abundance of caution, and in light of the gravity of the circumstances alleged, we provided the plaintiff with another opportunity to amend the complaint to allege facts that could support a claim under Section 1983, in light of the guidance we endeavored to provide in the Court's opinion. The plaintiff filed a second amended complaint that narrows her claims in some respects, and provides some additional nuance and detail. The defendants have renewed their motion to dismiss, on essentially the same grounds as those made before. Upon

---

[1] <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978).

consideration, although we find it to be a somewhat close issue, we conclude that the plaintiff has sufficiently pleaded a cause of action for Eighth Amendment violations and state-law torts against Dr. Hoffman and PrimeCare Medical to proceed beyond the pleadings, and will deny these medical defendants' motion to dismiss. In contrast, we find that the plaintiff's state-law tort claims against the municipal defendants must be dismissed because these parties are entitled to immunity from suit under Pennsylvania law.

## II.   **BACKGROUND**

The factual background is taken from the well pleaded factual allegations set forth in the amended complaint, which are accepted as true for purposes of considering the motion to dismiss. See Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (when evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.").

Between November 21, 2011, and March 5, 2013, Monique Mason was housed as an inmate at the Dauphin County Prison. Prior to her admission as an inmate, in

April 28, 2011, Mason was diagnosed with a colloid cyst[2] in the third ventricle of her brain, small lateral ventricles, calcification of her pineal gland, as well as possible Chiari formation. (Second Am. Compl. ¶ 21.) According to the complaint, the prison and medical defendants were aware of this diagnosis. In addition, according to the complaint, officials at the Prison were aware that on October 12, 2011, Dr. Stephen Powers had performed an MRI and had diagnosed Mason with small lateral ventricles, swollen brain symptoms, and severe headaches, including intermittent episodes of pre-syncope. (Id.)

The plaintiff alleges that between November 21, 2011, and March 2, 2013, prison officials and medical staff either were aware, or should have been aware, of the plaintiff's diagnosis, and indeed the plaintiff notes that on that date of her intake at the prison defendant PrimeCare Medical noted in records that Mason had a cyst in her brain, and anemia.

A month after her arrival at the prison, PrimeCare Medical noted that Mason's headaches were recurring more frequently, she was light-headed when she got out of bed, and again observed that she had a history of a colloid cyst. (Second Am. Compl. ¶ 24.) Seven months later, Mason presented with a "severe headache," and noted at

---

[2] According to the plaintiff, a colloid cyst is a non-cancerous growth that can increase in size. This size increase can cause headaches, dizziness and ultimately death depending upon the growth. (Am. Compl. ¶ 21.)

the time that she had been diagnosed with a cyst in her brain in 2011. (Am. Compl. ¶ 25.) Early in 2013, the plaintiff avers that Mason had experienced an incident called syncope, which is a symptom of brain swelling. (Id. ¶ 26.)

The following month, on February 25, 2013, PrimeCare noted that the plaintiff was again suffering from headaches attributable to migraines, and Mason was prescribed Topomax. The plaintiff alleges that despite knowledge of Mason's condition, PrimeCare Medical had no protocols, rules or procedures in place to assess, refer, or treat neurological problems such as those Mason experienced. (Id. ¶ 27.)

On February 27, 2013, Mason suffered a syncopal incident, which rendered her nonresponsive; although she was later aroused at the time she received medical care. The plaintiff alleges that PrimeCare Medical knew that Mason had been nonresponsive for a period. (Id. ¶ 30.) The plaintiff alleges that up to this time, Mason had reported severe and worsening headaches to the Dauphin County Prison medical staff and PrimeCare Medical on numerous occasions, and the response was to prescribe anti-migraine medication and Motrin without referring Mason to a neurologist, despite prison officials and medical providers working for the prison being aware of Mason's brain abnormalities, and despite knowing that Mason's colloidal cyst needed to be followed periodically by neurologists and neurosurgeons,

but failed to do so because they lacked any protocols, rules or procedures for such referrals.

Days later, on March 2, 2013, Mason was found on the floor by her bunk, nonresponsive.   Prison records indicate that CPR was administered and that emergency services were summoned.  Medical staff attempted to resuscitate Mason, but were unsuccessful and she was transferred by ambulance to Harrisburg Hospital.  (Id. ¶¶ 34-36.)  On March 5, 2012, Mason was declared brain dead, one day shy of her 32nd birthday.  (Id. ¶ 36.)

An autopsy was performed, which showed pressure, severe brain swelling and brain herniation as a result of hydrocephalus caused by Mason's underlying colloidal cyst and possible Chiari formation.   The autopsy listed the cause of death as complications of hypoxic encephalopathy and cerebral edema.  (Am. Compl. ¶ 37-38.)

## III.   Summary of Claims and the Defendants' Motion in Response

In Counts I and II of her second amended complaint, the plaintiff alleges that PrimeCare Medical and Dr. Carl A. Hoffman, Jr., were deliberately indifferent to Ms. Mason's known, serious medical conditions, and through this deliberate indifference proximately caused her death by failing to respond to and treat those conditions; ignored the condition of Mason's cyst and possible Chiari malformation and the

potential for it to cause hydrocephalus; failed to follow-up and consult with outside medical providers; failed to make proper medical judgments through qualified medical personnel; and failed to have in place proper protocols, rules or procedures for referring inmates with brain abnormalities, frequent headaches, and episodes of syncope to a specialist.

The remainder of the second amended complaint consists of two claims, listed as "claims" rather than "counts."  In "Claim I", the plaintiff purports to bring a "survival action" against PrimeCare, Dr. Hoffman, Warden DeRose, the County of Dauphin, and the Dauphin County Board of Commissioners for the alleged wrongful death of Ms. Mason – a claim that is grounded in Pennsylvania state law.  In "Claim II", the plaintiff purports to bring a claim for wrongful death under Pennsylvania law against all of the defendants.[3]

The defendants maintain that the plaintiff has failed to plead facts sufficient to state a claim for deliberate indifference under the Eighth Amendment, and additionally argue that the plaintiff continues to fundamentally misapprehend the reach of 42 U.S.C. § 1983, which does not afford liability based upon notions of

---

[3] Thus, in addition to alleging the constitutional tort claims set forth in Counts I and II, the plaintiff has brought a "survival action" on behalf of Mason's estate, pursuant to Pennsylvania state law, 42 Pa. Cons. Stat. Ann. § 8302. Similarly, the plaintiff brings a claim for wrongful death under Pennsylvania state law, 42 Pa. Cons. Stat. Ann. § 8301(b).  (Am. Compl. ¶¶ 62-75.)

vicarious liability.  Additionally, the defendants contend that the plaintiff has in any event failed to plead facts sufficient to support a claim for municipal liability under Monell.

## IV.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957) ).  The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555.  This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556.  Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Phillips v. County of Allegheny,

515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record.  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir.2007).  The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents."  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993).  Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered."  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.").  However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994).

## V.   DISCUSSION

### A.   42 U.S.C. § 1983

The text of 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 is not itself a source of substantive rights, but is rather a vehicle that plaintiffs may use in order to seek redress against state actors for alleged violations of rights under the Constitution or other federal law, including under the Eighth Amendment to the United States Constitution.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

### B.   Deliberate Indifference Under the Eighth Amendment

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  With respect to prisoner confinement, the Eighth Amendment obligates the government "to

provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976); see also Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Reynolds v. Wagner, 128 F.3d 166, 172-73 (3d Cir. 1997). "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.  In the worst cases, such a failure may actually produce physical torture or a lingering death."  Estelle, 429 U.S. at 103 (quoting In re Kemmler, 136 U.S. 436, 447 (1890)).

In Estelle, the United States Supreme Court held that prison officials violate the Eighth Amendment's proscription of cruel and unusual punishment when they exhibit "deliberate indifference to serious medical needs of prisoners."  429 U.S. at 104.  The standard that Estelle established "requires [both that there be] deliberate indifference on the part of the prison officials and [that] the prisoner's medical needs . . . be serious."  Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (quoting West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978)). Under this two-prong test, an inmate must first objectively establish a deprivation of medical care, or the result of such deprivation, the result of which was sufficiently serious to implicate a constitutional violation.  Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  An inmate's medical need is serious under this standard when it "has been diagnosed by

a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citations and internal quotations omitted). Secondly, the inmate-plaintiff must show that prison officials subjectively knew of the deprivation and "disregard[ed] an excessive risk to [the] inmate['s] health or safety." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Thus, in the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle, 429 U.S. at 105. To establish a violation of his constitutional right to adequate medical care in accordance with this standard, the plaintiff is thus required to point to evidence that demonstrates (1) Mason had a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); see also Woloszyn v. County of Lawrence, 396 F.3d 314, 321 (3d Cir. 2005) (for a claim of deliberate indifference against a prison official to survive, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). The Third Circuit has found deliberate indifference where a prison official: "(1) knows

of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197. The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, . . . violates the Eighth Amendment." Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003).

At the same time, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2002) (claims of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment). Instead, deliberate indifferent represents a much higher standard, one that requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse, 182 F.3d at 197 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate.

Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).  Thus, "the exercise by a doctor of his professional judgment is never deliberate indifference.   See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997).  It follows that a plaintiff's disagreement over the type of medical treatment given to him will not support a claim for deliberate indifference.  See Lanzaro, 834 F.2d at 346.

### C.   Individual Defendants Must Be Shown to Have Had Personally Involved in the Alleged Constitutional Deprivation

In addition to the foregoing substantive legal principles governing claims for Eighth Amendment violations premised on alleged deliberate indifference to a serious medical need, we note that in all claims brought for relief under § 1983, a plaintiff must show that each defendant had personal involvement in the alleged constitutional deprivation.  In order to prevail on a civil rights claim, a plaintiff must establish that: (1) the alleged wrongful conduct was committed by a person acting under color of

state law, and (2) the conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). It is thus axiomatic that in order to be liable under § 1983, a defendant must have had actual personal involvement in the alleged wrongdoing. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Such personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence. Id. To prove personal involvement through acquiescence requires that a plaintiff demonstrate that the defendant had contemporaneous knowledge of the alleged wrongdoing, and actual supervisory authority over the alleged violator. Robinson v. Pittsburgh, 120 F.3d 1286, 1293-94 (3d Cir. 1997). Thus, section 1983 liability cannot be predicated upon the application of *respondeat superior*. Rode, 845 F.2d at 1207-08.

### D. Monell Liability Likewise May Not Be Predicated on Principles of *Respondeat Superior*

Municipalities and private corporations that contract with the state to provide services cannot be subjected to liability under § 1983 on the basis of *respondeat superior*. See Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978) (holding that a municipality cannot be liable under § 1983 on a theory of *respondeat superior*).

Instead, in order to hold a private corporation liable under § 1983, a plaintiff must prove that he suffered a constitutional deprivation as a result of an official corporate policy or custom. Natale, 318 F.3d at 583-84; see also Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997); Griggs v. Dauphin County Prison, No. 1:06-0823; 2008 WL 2518090, at *4 (M.D. Pa. June 19, 2008); Miller v. City of Phila., No. 96-3578, 1996 U.S. Dist. LEXIS 17514, 1996 WL 683827, at *4 (E.D. Pa. Nov. 26, 1996) (in order to establish liability for a private corporation, a plaintiff must show that the corporation, "with 'deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm.'") (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). As the Third Circuit has explained, a

> policy or custom can be established in two ways. Policy is made when a "decisionmaker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). Custom may also be

established by evidence that demonstrates knowledge or acquiescence. <u>Beck</u>, 89 F.3d

at 971 (citing <u>Fletcher v. O'Donnell</u>, 867 F.2d 791, 793 (3d Cir. 1989)).

The law is similar with respect to municipal liability. Following <u>Monell</u>, a

local government cannot be sued pursuant to § 1983 for injuries inflicted solely by

its employees. 436 U.S. at 694. Instead, local governments may be held liable under

this statute only for "their own illegal acts." <u>Connick v. Thompson</u>, – U.S. –, 131 S.

Ct. 1350, 1359 (2011). The Third Circuit has recognized that local governments may

be liable in three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a
> formal government policy or a standard operating procedure long
> accepted within the government entity; second, liability will attach when
> the individual has policy making authority rendering his or her behavior
> an act of official government policy; third, the municipality will be
> liable if an official with authority has ratified the unconstitutional
> actions of a subordinate, rendering such behavior official for liability
> purposes.

<u>McGreevy v. Stroup</u>, 413 F.3d 359, 367 (3d Cir. 2005).

### E.   Plaintiff's Claims Against Dr. Hoffman Are Sufficient to State a Claim under Section1983[4]

Initially, it appears that Dr. Hoffman may have been named because he holds

some kind of supervisory responsibility within PrimeCare Medical, or is responsible

---

[4] It appears the plaintiff has dropped her Eighth Amendment claims against
Warden DeRose, and is instead now attempting to pursue them only as to Dr.
Hoffman and PrimeCare.

for supervising other medical providers at the prison.  The complaint contains few allegations to show that Dr. Hoffman was personally involved in Mason's care. However, upon consideration, we find that the plaintiff has alleged marginally sufficient facts in her second amended complaint to permit her to survive Dr. Hoffman's motion to dismiss at this stage.

Indeed, the plaintiff all but concedes the point in the amended complaint itself because she has made few allegations regarding Dr. Hoffman other than to note that he is a Medical Director at PrimeCare, and thus evidently a supervisor of some kind with that entity.  However, we note that plaintiff alleges that Dr. Hoffman and others "were aware that decedent Monique N. Mason had been diagnosed on April 28, 2011, with a colloid cyst in the third ventricle of her brain, small lateral ventricles, calcification of the pineal gland as well as possible Chiari malformation." (Second Am. Compl., ¶ 19.) The plaintiff has alleged that in addition to having intake records showing this serious diagnosis and condition (id. ¶¶ 22-23), the defendants were becoming increasingly aware that the decedent's headaches were more frequent and severe during her incarceration (id. ¶ 24).  Despite knowing of Ms. Mason's diagnosis of having a colloid cyst and other brain abnormalities, and despite her medical history not indicating a problem with migraine headaches, the plaintiff alleges that the medical defendants, including Dr. Hoffman, prescribed symptomatic care with

18

Topomax rather than assessing or treating her actual neurological problems of which they were already aware.  (Id. ¶¶ 27-29.)

The plaintiff further alleges that the "defendants", including Dr. Hoffman, were aware that in February 2013, that Ms. Mason had suffered another syncopal event, but "again refused and delayed treatment of Monique Mason's increasingly serious and potentially life-threatening condition in spite of their knowledge that her condition was deteriorating." (Id. ¶ 31.)  The plaintiff also alleges that Ms. Mason's condition was obvious and potentially fatal, and yet the defendants refused to treat her.  (Id. ¶ 32.)  Prior to Ms. Mason's death on March 2, 2013, it is alleged that she on numerous occasions reported to the PrimeCare Medical staff that her headaches were severe and worsening.  (Id. ¶ 40.)  Despite these complaints, and what are described as "accelerating symptoms," it is alleged that the defendants, including Dr. Hoffman, took no action to determine the cause of her condition or to provide "effective and adequate medical treatment for decedent." (Id. ¶ 43.)  The plaintiff also alleges that the medical defendants, including Dr. Hoffman, withheld the care that Ms. Mason manifestly needed because they did not want to expend the funds necessary to pay for treatment by an outside provider, since Ms. Mason was simply a parole violator, since the defendants wanted to wait to see if she would be released so that they would not need to incur further costs.  (Id. ¶ 45.)

Upon review of the allegations in the second amended complaint, we find that there are relatively few allegations that point to specific, personal involvement on the part of Dr. Hoffman.  However, upon consideration, we conclude that the foregoing highlighted factual averments in this case, which is predicated on a deliberate denial of medical care by Dr. Hoffman and PrimeCare as the third-party medical services provider for Dauphin County Prison and its inmates, are sufficient to allow the second amended complaint to survive a motion to dismiss.  Whether these claims ultimately can be proven remains to be seen, and the parties will be directed to engage in specific and targeted discovery that is intended to discover what Dr. Hoffman's personal, individual role was with respect to Ms. Mason and her treatment, or lack thereof, prior to her death.  But we will not dismiss these claims prior to the parties having an opportunity to test these claims through discovery.

### F.     Plaintiff's Claims Against PrimeCare Medical Will Be Permitted to Proceed

In her prior pleadings, the plaintiff overlooked the fact that claims for municipal or corporate liability in the § 1983 context expressly may not be predicated on *respondeat superior* or vicarious liability.  Nevertheless, that was precisely the basis for liability that the plaintiff asserted in her initial and first amended complaint with respect to her claims for municipal and corporate liability against Dauphin

County, its Commissioners, and PrimeCare Medical.  This is legally improper, and these claims were accordingly dismissed without prejudice.  In our prior order, we noted despite some conclusory allegations regarding corporate policies, it was clear that the plaintiff was mistakenly presenting her claims on a legally untenable theory of vicarious liability, and explicitly including allegations that said precisely that.

In the latest iteration of the complaint, the plaintiff has pared this claim back and brings it against PrimeCare Medical alone.  (Second Am. Compl., Count I.) Although the plaintiff continues to include allegations about PrimeCare's role as an agent, servant or employee of Dauphin County Prison, she has  now alleged with some specificity that PrimeCare failed in a number of specific ways to provide necessary medical care to Ms. Mason's known and serious medical conditions (id. ¶¶ 49(a)-(h)), and also alleges that PrimeCare had inadequate protocols, rules or procedures for addressing brain anomalies like those suffered by Ms. Mason.  Like the allegations against Dr. Hoffman, these allegations are somewhat thin and border on conclusory; however, we find that the plaintiff's narrowing of her claims, and the allegations regarding the policies of PrimeCare Medical, and its alleged lack of sufficient protocols and procedures for dealing with Ms. Mason's ultimately fatal condition, are sufficient to allow this Monell claim to proceed past a motion to dismiss so that the parties can undertake discovery focused on PrimeCare's policies

and procedures, so that a determination may be made about whether there is sufficient factual support for the plaintiff's claims of corporate liability under 42 U.S.C. § 1983.

## G.   Plaintiff's Municipal Liability Claims Against the Non-Medical Defendants Must Be Dismissed

Finally, the defendants have moved to dismiss the plaintiff's state-law claims seeking recovery for wrongful death pursuant to Pennsylvania's wrongful death and survival act statutes.  The municipal defendants, including Dauphin County and its Commissioners, argue that they are entitled to immunity from these claims pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. Ann. §§ 8501 et seq.  For her part, the plaintiff disregards this argument in her brief and has not disputed this defense.

The PSTCA provides immunity for the Commonwealth's political subdivisions, such as municipalities, except under limited circumstances that are defined by statute.[5]  Pursuant to Section 8541 of the PSTCA, "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on

_____

[5] The exceptions include:  (i) the operation of motor vehicles; (ii) the care, custody or control of personal property; (iii) the care, custody or control of real property; (iv) a dangerous condition of trees, traffic controls and street lighting; (v) a dangerous condition of stream, sewer, gas or electric systems; (vi) a dangerous condition of streets; (vii) a dangerous condition of sidewalks; and (viii) the care, custody and control of animals.  42 Pa. Cons. Stat. Ann. § 8542(b). These exceptions must be strictly construed.  Lindstrom v. City of Corry, 763 A.2d 394 (Pa. 2000).

account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. § 8251. Dauphin County is a local agency within the meaning of the PSTCA. Francis ex rel. Estate of Francis v. Northumberland County, 636 F. Supp. 2d 368, 401 n.72 (M.D. Pa. 2009). Likewise, a prison board and county board of commissioners also constitute local agencies within the purview of the PSTCA, and are thus entitled to immunity from liability for any alleged negligence on their part that allegedly resulted in Ms. Mason's death. Damron v. Smith, 616 F. Supp. 424, 426 (E.D. Pa. 1985); Holloway v. Brechtse, 279 F. Supp. 2d 613 (E.D. Pa. 2003) (under PSTCA, municipal agencies' immunity from liability for all state law tort claims extends to municipal offers acting in their official capacities). The PSTCA also provides that "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." 42 Pa. Cons. Stat. Ann. 8545. What this means, in practice, is that "the liability of local agency employees cannot exceed the liability of their employing agency." Francis ex rel. Estate of Francis v. Northumberland County, 636 F. Supp. 2d 368, 401 (M.D. Pa. 2009) (quoting Pettit v. Namie, 931 A.2d 790, 798 (Pa. Commw. Ct. 2007)).

23

Wrongful death and survivor act claims "'are not substantive causes of action; rather, they provide a means of recovery for unlawful conduct that results in death.'" Henderson v. City of Phila., No. 12-2602, 2012 WL 3024033, at *2-3 (E.D. Pa. July 23, 2012) (quoting Sullivan v. Warminster Twp., No. 07-4447, 2010 WL 2164520, at *6 (E.D. Pa. May 27, 2010)).  Wrongful death and survivor actions are claims that sound in tort under Pennsylvania law, and are governed by the PSTCA.  Id.; see also Marks v. Phila. Indus. Corr. Ctr., 2014 WL 5298008, at *4 (E.D. Pa. Oct. 15, 2014); Costobile-Fulginiti v. City of Phila., 719 F. Supp. 2d 521, 525 (E.D. Pa. 2010) ("Both of these claims sound in tort and are governed by the [PSTCA]."); Bomstad ex rel. Estate of Bomstad v. Honey Brook Twp., No. 03-3822, 2005 WL 2212359, at *22 n.53 (E.D. Pa. Sept. 9, 2005).  Neither wrongful death nor survivorship actions fall within the eight enumerated exceptions to the broad immunity provided, and thus the municipal defendants are immune from these state-law tort claims, and the claims against these defendants will be dismissed.  See Francis, 636 F.Supp. 2d at 401-02.

The medical defendants do not argue that they are entitled to the immunity conferred under the PSTCA, but instead reiterate their view that the plaintiff has not articulated a viable federal cause of action against them, and, therefore, urge the Court to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367.  The medical defendants make no other substantive argument in favor of dismissal.  We

have already found that the plaintiff has sufficiently stated Eighth Amendment claims against Dr. Hoffman and PrimeCare Medical, and, therefore, decline to embrace the defendants' argument that the tort claims should be dismissed at this time for lack of supplemental jurisdiction.  Whether the plaintiff is able to develop sufficient evidence to support her tort claims, and her constitutional claims, may be tested following discovery through summary judgment motions practice, if warranted.

## VI.   **ORDER**

Accordingly, for the reasons explained above, IT IS HEREBY ORDERED THAT the defendants' motion to dismiss the amended complaint (Doc. 38.) is GRANTED in part and DENIED in part.  The motion is DENIED with respect to the plaintiff's claims against Dr. Hoffman and PrimeCare Medical.  The motion is GRANTED with respect to the remaining defendants.

So ordered this 5th day of November 2015.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge