**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SUSAN K. MASON, as | : | Civil No. 1:14-CV-1680 |
| Administrator of the Estate | : | |
| of Monique N. Mason, | : | (Magistrate Judge Carlson) |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| PRIMECARE MEDICAL, INC. | : | |
| d/b/a PRIMECARE MEDICAL and | : | |
| CARL A. HOFFMAN, JR., D.O., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

## I.     INTRODUCTION

Now pending before the Court is a motion for summary judgment filed by PrimeCare Medical, Inc. ("PrimeCare") and Carl A. Hoffman, Jr., D.O. (collectively, with PrimeCare, the "defendants"). (Doc. 60.)  The motion is fully briefed and is ripe for disposition.

The defendants argue that the plaintiff has adduced insufficient evidence to support her remaining claims that either PrimeCare or Dr. Hoffman was deliberately indifferent to Monique Mason's serious medical needs, in violation of the Eighth Amendment to the United States Constitution.  The defendants further

argue that the Court should decline to exercise supplemental jurisdiction over the plaintiff's state-law tort survival action and wrongful death claims, and should instead direct the plaintiff to refile these claims in the Pennsylvania Court of Common Pleas.

For the reasons that follow, the motion will be granted in part and denied in part. The plaintiff's claims against PrimeCare and Dr. Hoffman have always presented very close questions of law, in light of the particular strictures that govern supervisory constitutional tort claims against a corporate entity like PrimeCare, and its principal, Dr. Hoffman, who appeared to have had little to no direct involvement in Ms. Mason's actual medical care.

The Court previously found, out of an abundance of caution, and reading the complaint in the light most favorable to the plaintiff, that the plaintiff's second amended complaint contained sufficient factual allegations to proceed to discovery. In making this finding, however, the Court expressly noted that this was "a somewhat close issue" and observed that the plaintiff had made "relatively few allegations that point to specific, personal involvement on the part of Dr. Hoffman." Nevertheless, the Court found that, with respect to Dr. Hoffman, that the plaintiff had "alleged marginally sufficient facts" to survive a motion to dismiss. (Doc. 42, at pp. 3, 18, 20.)

With respect to the claims against PrimeCare, the Court noted that in her earlier pleadings the plaintiff seemed to misapprehend the requirements developed over years of federal jurisprudence which made clear that "claims for municipal or corporate liability in the [42 U.S.C.] § 1983 context expressly may not be predicated on *respondeat superior* or vicarious liability." (Doc. 42, p. 20.) Yet, that was expressly the plaintiff's theory of liability against PrimeCare in both her initial and first amended complaints. In her second amended complaint, we noted that the plaintiff had continued to include allegations about PrimeCare's role as an agent, servant or employee of the Dauphin County Prison – allegations which would not support a claim under § 1983 for the reasons we had explained – but we also found that the plaintiff had alleged that PrimeCare had inadequate protocols, rules or procedures for addressing brain abnormalities like those suffered by Ms. Mason, although these allegations were "somewhat thin and border[ed] on conclusory[.]" (Doc. 42, p. 21.) Nevertheless, reading the complaint in the light most favorable to the plaintiff, the Court found that

> the plaintiff's narrowing of her claims, and the allegations regarding the policies of PrimeCare Medical, and its alleged lack of sufficient protocols and procedures for dealing with Ms. Mason's ultimately fatal condition, are sufficient to allow this *Monell* claim to proceed past a motion to dismiss so that the parties can undertake discovery focused on PrimeCare's policies and procedures, so that a determination may be made about whether there is sufficient factual support for the

3

plaintiff's claims of corporate liability under 42 U.S.C. § 1983.

With the defendants having moved for summary judgment, the time for testing the sufficiency of the plaintiff's evidentiary showing has arrived. Upon careful consideration of the parties' briefs and the evidence that has been submitted, the Court is unable to find that the plaintiff has developed evidence that would be sufficient to support a claim for *Monell* liability against PrimeCare or for § 1983 liability against Dr. Hoffman. The record simply does not contain evidence that would show that PrimeCare had a custom or policy that caused the constitutional deprivation alleged.

Similarly, the record does not contain any evidence that would support the plaintiff's claim that Dr. Hoffman had sufficient personal involvement in Ms. Mason's care that could support a claim for deliberate indifference under § 1983. As the Court has endeavored to explain in its prior written decisions in this case, regardless of the plaintiff's adamant view that Dr. Hoffman's role as a supervisor and principal of PrimeCare should be sufficient to expose him to liability for the deliberate indifference of other medical providers, the law is decidedly to the contrary.

The plaintiff elected to pursue her remaining deliberate indifference claims only as to Dr. Hoffman and PrimeCare; she did not bring claims against Dr.

William Young or the other medical providers who actually had direct personal involvement in Ms. Mason's care, including immediately before she slipped out of consciousness on May 2, 2014. Whether the plaintiff might have had viable Eighth Amendment claims against these other medical providers is not, and never has been, before the Court, and the Court expresses no opinion on that hypothetical issue. What is clear is that the plaintiff was not able to develop evidence that could have shown that Dr. Hoffman had any personal involvement in Ms. Mason's care or treatment decisions. Likewise, the plaintiff did not present evidence that could allow a factfinder to conclude that PrimeCare's policies or protocols caused the alleged constitutional injury. Accordingly, the Court is constrained to find that PrimeCare and Dr. Hoffman are entitled to judgment in their favor with respect to the plaintiff's Eighth Amendment claims against them.

The Court recognizes and appreciates that in the ordinary case, where the Court has dismissed all claims over which the Court had federal subject-matter jurisdiction, it ordinarily must dismiss any additional claims over which it has only supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), subject to certain exceptions over which the Court enjoys substantial discretion in assessing. Because this is a case that has been pending in this Court for a considerable period of time and has been litigated here by the parties, and because the Court intends to act carefully before determining whether the action should or must be dismissed so

that the plaintiff may pursue her remaining state-law claims in the Court of Common Pleas, the Court will provisionally retain jurisdiction over the survival and wrongful death claims, and direct the parties to engage in settlement proceedings with the assistance of another Magistrate Judge of this Court. If those settlement proceedings are not successful, the Court will enter a further order directing briefing on the issue of whether the Court should retain supplemental jurisdiction over the remaining state-law claims.

## II.   BACKGROUND AND STATEMENT OF THE CASE

This case comes before the Court under tragic circumstances. On May 2, 2013, a Saturday, Monique Mason was found unresponsive on the floor of her cell at the Dauphin County Prison. Prior to this time, she had been housed at the prison for approximately one and a half years on a parole violation. Before falling out of consciousness, Ms. Mason had complained on multiple occasions to nurses about increasing headaches. The nurses provided her with headache medication, including on the Friday immediately before the day she was found unresponsive.

Mason was transferred to a local hospital where she was pronounced dead on May 5, 2013. Ms. Mason's cause of death was listed as complications from hypoxic encephalopathy and cerebral edema, which were caused by an expanding colloidal cyst on her brain. Ms. Mason was just 31 years old and left behind two children.

The plaintiff alleges that on April 28, 2011, Ms. Mason was diagnosed with a colloid cyst in the third ventricle of her brain, small lateral ventricles, calcification of the pineal gland and possible Chiari malformation. (Am. Compl., ¶ 19.) The plaintiff alleges that the defendants were aware of this condition once Ms. Mason was admitted to Dauphin County Prison in November 2011, (id., ¶¶ 19-23), but the evidence does not necessarily bear this out, and the defendants have noted that there is a dispute over whether Ms. Mason was actually diagnosed with colloid cyst prior to her incarceration. (Doc. 60, p. 7.) For purposes of this decision, however, the Court interprets the record in the light most favorable to the plaintiff, and will presume that Ms. Mason was, in fact, diagnosed with colloid cyst and that there was evidence in her medical records that showed she had a calcified pineal gland and a small, high density abnormality in the foramen of Monroe where a colloid cyst would reside.[1] (Doc. 64, ¶ 28.)

---

[1] Ms. Mason's treatment notes from Devonshire Family Medicine dated May 9, 2011, provide further support for this factual assertion, as these records reflect a finding that Ms. Mason had a "Colloidal cyst in the brain at the foraman of monro" and that Dr. Stephen Powers "agrees that removing the cyst is the best thing." (Doc. 61, Ex. B.) This record stands in some contrast to Dr. Powers's treatment record of April 28, 2011, where he interpreted Ms. Mason's April 27 CT scan as revealing a small, high density abnormality which is highly suggestive of a colloid cyst, though he concluded her neurologic exam was normal. (Doc. 61, Ex. C, Pennsylvania Neurosurgical and Neuroscience Institute (PNNI) Treatment Record dated April 28, 2011.) On May 13, 2011, though he continued to find that Ms. Mason had a small, high density abnormality, Dr. Powers found that the plaintiff did not have any neurosurgical issues and released her from his continued care. (Doc. 61, Ex. D, PNNI Treatment Record dated May 13, 2011.)

On November 21, 2011, Ms. Mason was admitted to the Dauphin County Prison as a pretrial detainee. PrimeCare is contracted to provide medical services to inmates incarcerated at Dauphin County Prison. (Doc. 61 ¶ 20 and Ex. A, Comprehensive Health Services Agreement.) Dr. William Young, who is not named as a defendant in this lawsuit, is the Medical Director of the Dauphin County Prison. He testified that after reviewing the Ms. Mason's medical records, he did not believe that Ms. Mason had a colloid cyst, but only a calcified pineal gland. He further testified that after reviewing these reports, he believed that Ms. Mason had an ophthalmological issue, relying in part on Dr. Stephen Powers's recommendation that she had no neurosurgical issues at the time. (Doc. 61, ¶ 32 and Ex. E, Dep. of Dr. William Young, pp. 60-61.)

More than a year after she was admitted to Dauphin County Prison, Ms. Mason was involved in an incident involving syncope – a temporary loss of consciousness or fainting – on January 25, 2013. (Am. Compl., ¶ 26; Doc. 61, Ex. F, Dep. of Joseph R. Macut, p. 56:16-18.) According to the Medical Incident/Injury Report dated January 25, 2013, Taihesha Hawkins, LPN, responded to the incident. In her report, Nurse Hawkins noted that no injuries were observed and Ms. Mason was returned to her housing area. (Doc. 61, Ex. G.) Review of the records indicates that Ms. Mason had experienced syncopal episodes periodically,

including before and during the time that she was an inmate at Dauphin County Prison.

During this time, Ms. Mason also reported that she was suffering headaches regularly, which seem to have been of increasing severity. On February 25, 2013, the plaintiff was prescribed Topamax for migraines. (Am. Compl., ¶ 27.) On February 27, 2013, Ms. Mason suffered another syncopal episode, which rendered her unresponsive, though she later was aroused by the time she received medical care. (Am. Compl., ¶ 30.) At that time, Ms. Mason was attended to by Joseph Macut, PA-C. PA Macut evaluated Ms. Mason and found that her vital signs were normal and he diagnosed her with a headache and possible syncopal episode. (Macut Dep. p. 106.) At this time, Ms. Mason was also restricted to the low bunk in her housing unit, and was placed on gym and work restrictions until she could be seen by a doctor. (Doc. 61, Ex. H, Medical Incident/Injury Report dated February 27, 2013.)

On Friday, March 1, 2013, medical staff was again summoned to assist Ms. Mason, who was found passed out in her cell briefly and complaining of headaches. The notes taken during this time indicate that Ms. Mason had been sitting on the stairs outside the shower area when she blacked out after bending over to wash herself. She reported that fellow inmates helped her to dry herself and get dressed. She reported "unbearable pressure in her frontal lobe where she

said a tumor is at." (Doc. 61, Ex. I, Medical Note dated March 1, 2013, Crystal Keck, LPN.)  Nurse Keck checked Ms. Mason's other vital signs and found them to be within normal range.  She scheduled an appointment for Ms. Mason to be seen by Joseph Macut, PA-C on March 4, 2013 – the following Monday.  (Id.) According to Mr. Macut, this is the first time he would have been able to see her. (Doc. 61, Ex. F, Macut Dep., pp. 112-113.)

The following day, March 2, 2013, Ms. Mason was found unresponsive on the floor next to her bunk.  (Doc. 61, Ex. K, Medical Incident/Injury Report dated March 2, 2013.)  She was thereafter transferred to Harrisburg Hospital where she died on March 5, 2013.  (Am. Compl., ¶¶ 33, 34.)

The decedent's mother, Susan K. Mason, was appointed as the Administrator of Monique's estate, and initiated legal proceedings, first by filing a writ of summons on December 12, 2013, in the Dauphin County Court of Common Pleas.  She withdrew that action on May 2, 2014, and on August 28, 2014, filed her initial complaint in this Court.  In that complaint the Administrator brought claims against the Dauphin County Prison, Warden Dominick DeRose, and the Dauphin County Board of Commissioners, as well as against PrimeCare Medical, Inc., and Carl. A. Hoffman, Jr., D.O.  Dr. Hoffman is the owner of PrimeCare, a third-party provider which contracts with Dauphin County to provide medical care at the Dauphin County Prison.

The plaintiff filed an amended complaint on December 22, 2015, again alleging constitutional violations and state torts. (Doc. 8.) The defendants moved to dismiss that amended pleading on January 5, 2015, and the Court granted the motion by Order entered on April 27, 2015. (Docs. 29, 36.) However, in consideration of the gravity of the circumstances alleged, and out of an abundance of caution, the Court granted the plaintiff leave to file a second amended complaint, which she filed on May 18, 2015. (Doc. 37.) In Counts I and II of the second amended complaint, the plaintiff alleged that PrimeCare and Dr. Hoffman were deliberately indifferent to a serious medical need – namely, the plaintiff's expanding colloidal cyst – and that this indifference led to Monique Mason's death. In addition to these constitutional claims, the plaintiff also brought two state-law claims against all defendants, the first a "survival action" on behalf of Mason's estate, pursuant to Pennsylvania state law, 42 Pa. Cons. Stat. Ann. § 8302, as well as a claim for wrongful death under Pennsylvania state law, 42 Pa. Cons. Stat. Ann. § 8301(b). (Am. Compl. ¶¶ 62-75.) The defendants filed a motion to dismiss, and the Court granted the motion in part and denied it in part. (Doc. 38, 42.)

In its Order, the Court dismissed with prejudice the claims against Dauphin County Prison, Warden DeRose, and the Dauphin County Board of Commissioners. (Doc. 42.) In contrast, although it was a very close issue, the

Court found that the plaintiff had adequately alleged facts to state claims against PrimeCare and Dr. Hoffman. The plaintiff did not name any other medical personnel in her lawsuit, including any of the nurses who attended to her, or Dr. Young, who was the physician in charge of medical services at the prison. Instead, she has proceeded only as to Dr. Hoffman and PrimeCare, even though there is no evidence that Dr. Hoffman ever saw or treated Ms. Mason, and even though as it now appears, there is no evidence to demonstrate that PrimeCare maintained policies or protocols that caused Ms. Mason's demise. As explained below, this lack of evidence of either personal involvement or an unconstitutional policy forecloses the plaintiff's constitutional claims that the remaining defendants violated Ms. Mason's right under the Eighth Amendment to be free from cruel and unusual punishment through their deliberate indifference to her serious medical needs.

## III.   **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Thus, where no material fact is in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 248. Conversely, where there is a dispute as to an issue of material fact, the moving party must establish that the factual dispute is not a genuine one. *Id.*

The party moving for summary judgment bears an initial burden of identifying evidence that it believes demonstrates the absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has carried this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. *Celotex*, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant

summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. *Anderson*, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. *Id.* at 252; see also *Matsushita*, 475 U.S. 574, 586 (1986).

In determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consolidated Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In deciding a motion for summary judgment, the court need not accept allegations that are merely conclusory in nature, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Moreover, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Id.*

## IV.  **DISCUSSION**

Before addressing the substantive legal issues presented, the Court begins by recognizing that the events which inspired this litigation are truly tragic and profoundly saddening. While we are constrained to follow the settled law as it has

14

developed in the field of supervisory and corporate civil rights liability, nothing about any assessment of the merits of the legal claims or the procedural benchmarks that govern these corporate and supervisory civil rights claims that have been filed in this case can overshadow the truly pitiable circumstances that befell Ms. Mason in the days leading up to her untimely death. The plaintiff's choice of legal claims and defendants in this case, however, has real legal consequences which we have previously outlined in this litigation, and these legal consequences turn in significant way on the well-settled legal principles that undergird civil rights laws and constitutional tort claims.

### A.    42 U.S.C. § 1983

The plaintiff brings constitutional claims for deliberate indifference to serious medical need against Dr. Hoffman and PrimeCare pursuant to 42 U.S.C. § 1983. The text of 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but is rather a vehicle that plaintiffs may use in order to seek redress against state actors

for alleged violations of rights guaranteed by the United States Constitution or other federal law, including under the Eighth Amendment to the Constitution. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

### B. The Eighth Amendment and "Deliberate Indifference"

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." With respect to prisoner confinement, the Eighth Amendment obligates the government "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Reynolds v. Wagner*, 128 F.3d 166, 172-73 (3d Cir. 1997). "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death." *Estelle*, 429 U.S. at 103 (quoting *In re Kemmler*, 136 U.S. 436, 447 (1890)).

In *Estelle*, the United States Supreme Court held that prison officials violate the Eighth Amendment's proscription of cruel and unusual punishment when they exhibit "deliberate indifference to serious medical needs of prisoners." 429 U.S. at 104. The standard that *Estelle* established "requires [both that there be] deliberate indifference on the part of the prison officials and [that] the prisoner's medical

needs . . . be serious." *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978)). Under this two-prong test, an inmate must first objectively establish a deprivation of medical care, or the result of such deprivation, the result of which was sufficiently serious to implicate a constitutional violation. *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). An inmate's medical need is serious under this standard when it "has been diagnosed by a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citations and internal quotations omitted). Secondly, the inmate-plaintiff must show that prison officials subjectively knew of the deprivation and "disregard[ed] an excessive risk to [the] inmate['s] health or safety." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Thus, in the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. *Estelle,* 429 U.S. at 105. To establish a violation of her constitutional right to adequate medical care in accordance with this standard, a plaintiff is thus required to point to evidence that demonstrates (1) Monique Mason had a serious medical need, and (2) acts or omissions by prison

officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Woloszyn v. County of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005) (for a claim of deliberate indifference against a prison official to survive, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197. The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, . . . violates the Eighth Amendment." *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003).

At the same time, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2002) (claims of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment). Instead, deliberate

indifferent represents a much higher standard, one that requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse*, 182 F.3d at 197 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. *Clark v. Doe*, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Thus, "the exercise by a doctor of his professional judgment is never deliberate indifference. *See e.g. Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997). It follows that a plaintiff's disagreement over the type of medical treatment given to him will not support a claim for deliberate indifference. *See Lanzaro*, 834 F.2d at 346.

   **C.    Individual Defendants Must Have Personal Involvement in the Underlying Constitutional Deprivation to Be Liable Under 42 U.S.C. § 1983**

In order to prevail on a civil rights claim, such as the Eighth Amendment claims brought in this case, a plaintiff must prove that: (1) the alleged wrongful conduct was committed by a person acting under state law; and (2) the conduct deprived her of a right, privilege, or immunity secured by the Constitution or other federal law. *Nicini*, 212 F.3d 798, 806 (3d Cir. 2000). It is furthermore a bedrock and well-established principle of civil rights law that in order to be liable under § 1983, an individual defendant must have had actual personal involvement in the alleged wrongdoing. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Personal involvement may be shown through proof of personal direction or actual knowledge and acquiescence. *Id.* In order to prove personal involvement through acquiescence requires that a plaintiff prove that a defendant had contemporaneous knowledge of the alleged wrongdoing, and actual supervisory authority over the alleged violator. *Robinson v. Pittsburgh*, 120 F.3d 1286, 1293-94 (3d Cir. 1997). In other words, unlike in the context of state-law tort claims for which there may be supervisory liability in some circumstances, § 1983 liability cannot be predicated upon the application of *respondeat superior*. *Rode*, 845 F.2d at 1207-08. As the Supreme Court has observed:

> [Supervisory] officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . *See Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also

> *Dunlop v. Munroe,* 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); *Robertson v. Sichel,* 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each . . . official defendant, through the official's own individual actions, has violated the Constitution

*Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).

### D. *Monell* Liability May Not Be Predicated on Principles of *Respondeat Superior*

Municipalities and private corporations that contract with the state to provide services also cannot be subjected to liability under § 1983 on the basis of *respondeat superior*. *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978) (holding that a municipality cannot be liable under § 1983 on a theory of *respondeat superior*). Instead, in order to hold a private corporation liable under § 1983, a plaintiff must prove that he suffered a constitutional deprivation as a result of an official corporate policy or custom. *Natale*, 318 F.3d at 583-84; *see also Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Griggs v. Dauphin County Prison*, No. 1:06-0823; 2008 WL 2518090, at *4 (M.D. Pa. June 19, 2008);

*Miller v. City of Phila.*, No. 96-3578, 1996 U.S. Dist. LEXIS 17514, 1996 WL 683827, at *4 (E.D. Pa. Nov. 26, 1996) (in order to establish liability for a private corporation, a plaintiff must show that the corporation, "with 'deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm.'") (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). As the Third Circuit has explained, a

> policy or custom can be established in two ways. Policy is made when a "decisionmaker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

*Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). Custom may also be established by evidence that demonstrates knowledge or acquiescence. *Beck*, 89 F.3d at 971 (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989)).

The law is similar with respect to municipal liability. Following *Monell*, a local government cannot be sued pursuant to § 1983 for injuries inflicted solely by its employees. 436 U.S. at 694. Instead, local governments may be held liable under this statute only for "their *own* illegal acts." *Connick v. Thompson*, 563 U.S.

51, 60 (2011) (original emphasis) (citations omitted). The Third Circuit has recognized that local governments may be liable in three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

*McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).

### E. The Plaintiff Has Not Come Forward with Evidence Sufficient to Show that Dr. Hoffman Had Personal Involvement in Ms. Mason's Medical Care or Treatment

Rather than ensuring that the defendants named in this case had actual involvement in Ms. Mason's care, and rather than developing proof regarding personal involvement, the plaintiff has instead proceeded against a single individual defendant who manifestly had no involvement of any kind in Ms. Mason's treatment or medical care, and who may actually have had no knowledge of Ms. Mason at all prior to her death. Instead, this individual defendant – Dr. Carl Hoffman – appears to have been named as a defendant because of his role as the founder of PrimeCare and a current executive who sits on the company's

Utilization Review Committee, facts that by themselves do not expose Dr. Hoffman to individual liability for the alleged misconduct of others.

The Court previously construed the second amended complaint in the light most favorable to the plaintiff when considering the defendants' Rule 12(b)(6) motion to dismiss, and in so doing found that the plaintiff "alleged marginally sufficient facts" to permit her claim to go forward against Dr. Hoffman. (Doc. 42, at p. 10.) On summary judgment, however, bare factual allegations are insufficient, and it was incumbent upon the plaintiff to show that Dr. Hoffman did, in fact, have the degree of personal involvement in the alleged deliberate indifference to Ms. Mason's serious medical needs that would expose him to potential liability under § 1983. She has not done so.

Indeed, review of the plaintiff's brief in opposition to the defendants' motion makes it evident that she persists in attempting to attribute liability to Dr. Hoffman for the shortcomings of other subordinate PrimeCare employees – something that the Court has attempted several times to emphasize is unavailable in § 1983 litigation. Thus, by way of example, the plaintiff's brief argues at length regarding the medical decisions, treatment and judgment of Dr. Young – the PrimeCare physician in charge of medical services at the Dauphin County Prison. Yet, Dr. Young is not and never has been a defendant in this litigation. And Dr. Hoffman cannot be liable for any arguably constitutional shortcomings of Dr. Young unless

he can be shown to have had personal involvement in those shortcomings that would be sufficient for personal liability to attach. Here, the plaintiff has offered no such evidence.

Similarly, the plaintiff questions or finds some degree of fault in PA Macut's treatment or decisions made by Nurse Keck, yet neither of these individuals has ever been named as a defendant in this case, and the Court has no legal basis even to consider whether their treatment would be sufficient to show violations of the Eighth Amendment, at least insofar as the plaintiff is now belatedly suggesting that their treatment exhibited deliberate indifference to Ms. Mason's worsening condition. Instead, the plaintiff seems to be attempting to argue that these medical providers were deliberately indifferent in the face of mounting evidence and reason for concern, and then to argue that Dr. Hoffman should bear responsibility for their indifference. As we have tried to make clear, the law does not recognize this kind of liability for constitutional torts.

In short, the plaintiff has focused her arguments regarding deliberate indifference on individuals other than the one remaining individual defendant, apparently believing that if she demonstrated that these other providers who are not defendants could be shown to have been deliberately indifferent, then liability could be extended to Dr. Hoffman. The caselaw in this field is decidedly to the contrary, and the plaintiff has come forward with no evidence that Dr. Hoffman

had anything at all to do with Ms. Mason's actual medical treatment while housed at the Dauphin County Prison. Instead, the plaintiff has noted only that Dr. Hoffman is the president and corporate medical director for PrimeCare, and his wife is the executive vice president. (Doc. 66, p. 10.) The plaintiff also observes that Dr. Hoffman is the head of PrimeCare's Utilization Review Committee, which would determine requests for outside consultations for prisoners if a request is made. (*Id.*, p. 11.) But here too the plaintiff's argument fails, because the plaintiff has simply relied upon evidence to show that *if* a request for an outside medical referral or consult was submitted, Dr. Hoffman *would* have been involved in reviewing it. Dr. Young testified only that if such a request was made, and he believed outside referral was necessary, Dr. Hoffman would be involved in that review.

Yet there is no evidence of which the Court is aware that any referral was actually ever made or requested at around the time of Mason's death, since Dr. Young did not believe that outside medical consultation was necessary given what he believed he understood about Ms. Mason's condition. Thus, regardless of whether Dr. Hoffman would have some responsibility for reviewing such requests if made, there is no evidence here that Dr. Hoffman ever considered Ms. Mason's case, or whether outside medical consultation would have been advisable. In short, the plaintiff has attempted to bring claims against Dr. Hoffman for deliberate

indifference to Ms. Mason's serious medical needs, but there is no evidence that Dr. Hoffman had any personal involvement with Ms. Mason's care, or that he had any relationship to this case aside from his role as an executive with PrimeCare – which simply is not sufficient to support a claim against him personally under 42 U.S.C. § 1983. Accordingly, having previously observed that the second amended complaint "contains few allegations to show that Dr. Hoffman was personally involved in Ms. Mason's care," (Doc. 42, at p. 17), the Court is now constrained to find that the plaintiff has been unable to come forward with any evidence to show the requisite personal involvement on Dr. Hoffman's part that is necessary to support an Eighth Amendment claims against him personally. Accordingly, Dr. Hoffman is entitled to summary judgment on the plaintiff's Eighth Amendment claim.

**F.     Plaintiff's Eighth Amendment Claims Against PrimeCare Medical Fail for Lack of Evidence of a Custom or Policy**

The Court previously found that the plaintiff's Eighth Amendment claims against PrimeCare were "somewhat thin and border[ed] on conclusory," (Doc. 42, at p. 21.), but nevertheless found that she alleged sufficiently that PrimeCare lacked sufficient protocols and procedures for dealing with Ms. Mason's ultimately fatal condition that would allow the litigation to proceed to discovery "so that a determination may be made about whether there is sufficient factual support for the plaintiff's claims of corporate liability under 42 U.S.C. § 1983." (*Id.*) The

defendants have now moved for summary judgment on the plaintiff's *Monell* claim, arguing that the plaintiff has not demonstrated deliberate indifference generally, and that the claims fail on the merits. The Court is constrained to agree that the plaintiff has not come forward with sufficient evidence to show that PrimeCare maintained policies, practices, or protocols that directly caused the constitutional injuries alleged.

As discussed above, the plaintiff's entire argument in this case has focused on the alleged shortcomings in the treatment and care provided by Dr. Young, PA Macut, and some of the nurses working at Dauphin County Prison, all of whom the plaintiff believes should have and could have done more in the face of mounting evidence that Ms. Mason was suffering something far more significant than a series of bad headaches. Just as the plaintiff endeavored to support her claims of personal liability against Dr. Hoffman on the alleged inadequacies of these subordinate employees, she has similarly relied on this kind of argument to support her *Monell* claim against PrimeCare. This she may not do, as supervisory liability is insufficient to support a *Monell* claim for municipal or corporate liability.

Nevertheless, the Court has carefully reviewed the record in an effort to determine whether there might be some evidence that conceivably might demonstrate that a policy or policies did exist, and that they contributed to Dr. Young's treatment decisions and Ms. Mason's demise. Following this review,

however, the Court has found no evidence – much less argument – that PrimeCare maintained policies or customs or official practices that were themselves deficient, and directly caused the constitutional injuries claimed in this case. Rather than highlight evidence that arguably could be construed to show a deficient policy, the plaintiff has merely relied upon the alleged failures of subordinate staff in an effort to bring a § 1983 claim against the employer – which is nothing other than an effort to bring a claim for *respondeat superior* liability, which is not available as a legal predicate for this claim, something that the Court had attempted previously to highlight for the parties. (Doc. 42.)

Because the plaintiff was unable to develop sufficient evidence to show that PrimeCare maintained constitutionally deficient policies, practices, protocols or customs that directly caused or contributed to Ms. Mason's injuries, PrimeCare is entitled to summary judgment on the plaintiff's *Monell* claim.

### G.    Plaintiff's Supplemental State-Law Tort Claims

In their motion, the defendants have argued in conclusory fashion that if the Court grants summary judgment on the plaintiff's § 1983 claims, the Court should reflexively dismiss the plaintiff's state-law tort survivor action and claim for wrongful death.

Recently, the Supreme Court has underscored that federal district courts retain substantial discretion to exercise supplemental jurisdiction over state-law

29

claims where the court finds that sufficient basis to do so.  *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.")  In the exercise of this discretion the Third Circuit has instructed us that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

In this case, neither the defendants nor the plaintiff have made any substantive argument with respect to the question of whether "considerations of judicial economy, convenience, and fairness to the parties" provide sufficient justification for retaining jurisdiction over the plaintiff's remaining state-law tort claims pursuant to 28 U.S.C. § 1367(a).  The parties have not addressed whether there may be affirmative justifications for the Court to retain supplemental jurisdiction over the survivor action and wrongful death claim.

Given the nature of the claims in this case, the Court is particularly sensitive to the importance of this litigation to both the plaintiff and the defendants.  The Court is also mindful that this action has experienced a halting procedural history,

having first begun in the Court of Common Pleas before being refiled in this Court, and subject to substantial discovery and motions practice since being filed here. Given this procedural history, and the lack of substantive argument from any of the parties with respect to the matter of the Court's discretion regarding supplemental jurisdiction, the Court declines at this time to rule on whether to relinquish its jurisdiction over the remaining state-law claims. Instead, the Court will direct that the parties first engage in meaningful settlement discussions before another Magistrate Judge of this Court with respect to the remaining claims. If those settlement discussions do not result in an agreed-upon resolution of the plaintiff's remaining tort claims, the Court will schedule further briefing on the issue of supplemental jurisdiction, and shall reserve a ruling on whether to relinquish jurisdiction over the remaining claims pending review of the parties' arguments.

    An Order consistent with this Memorandum shall be issued separately.

*/s/  Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated:  April 18, 2017